UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREEWAY DRIVE INVESTMENTS, LLC,

     Plaintiff,

                           Case No. 16-12677

v.

                           Honorable Victoria A. Roberts

EMPLOYERS MUTUAL CASUALTY COMPANY,

     Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. 26] AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Doc. 29]

Freeway Drive Investments, LLC ("Freeway Drive") owns a single story commercial building, insured by Employers Mutual Casualty Company ("EMCC"). The building sustained damage when trusses within the roof shifted and dropped, causing visible sagging. Freeway Drive filed a claim for coverage; EMCC denied it.

Freeway Drive sued EMCC for breach of the policy of insurance ("Policy"), and a declaration that EMCC is contractually obligated to pay all costs related to the damage. The parties filed cross motions for summary judgment. ("Freeway Drive Motion" and "EMCC Motion").

Freeway Drive argues that the collapse was caused by the weight of snow, a covered loss under the Policy. EMCC argues that the collapse was caused by thermal deterioration due to the application of fire retardant, and the Policy exempts such deterioration damage from coverage. EMCC also argues that even if Freeway Drive is

correct concerning the cause of loss, the Policy does not provide coverage for a collapse solely due to the weight of snow.

The Court concludes that collapse due to the weight of snow is a covered loss under these circumstances. But, genuine issues of material fact as to the cause of the roof collapse require that the Court DENY both motions for summary judgment.

I.      Factual Background

        A.  The Collapse And Initial Inspection

On March 3, 2015, Richard Pietila, a maintenance contractor with Pietila Construction, and other employees, performed maintenance work inside the building. They heard a loud noise and noticed the roof sagging. Pietila testified at deposition that he and the other employees went outside to assess the situation, and observed that there was a substantial amount of snow on the roof of the building; he believed about four feet had accumulated. Pietila called Sherman Freund, the general manager of Freeway Drive to inform him about the roof and to get approval to clear the snow. Pietila did not reach Freund; he left him a message. The next morning, Pietila observed that the sagging had worsened. He went into the attic and saw several broken trusses and other damage to the roof's structure. Pietila testified that about a week or a week and a half earlier, he was in the attic and saw no problems with the roofing structure. He believes that the damage was caused by snow on the roof. [Freeway Drive Motion, Pg. 4-5].

B.  Brinjikji's Inspections

Freeway Drive, through construction contractor John Bialowicz, asked structural engineer Abdul Brinjikji to assess the damage. Brinjikji testified at deposition that he visited the building three times. On his first visit, he went into the attic on the south side of the building, and observed the sagging roof, broken trusses, and truss diagonals that had slipped or pulled from their connector plates. He did not inspect the north side of the building because the lighting was insufficient. Brinjikji saw snow on the roof on this first visit, but could not estimate how much. After this initial visit, Brinjikji sent a text message to Bialowicz, recommending that everyone be evacuated from the building. [Freeway Drive Motion, Ex. 5]. Brinjikji's expert opinion is that the roof collapse was caused by an overload of snow. He developed a plan to shore up the roof, and Pietila Construction began the repairs. [Freeway Drive Motion, Pg.at 5-7].

In April 2015, after Pietila Construction performed the initial repairs, Brinjikji inspected the building a second time. Brinjikji testified that during this second visit, he went to the attic again and was able to see better. He noticed additional slippage on the south side of the roof, but cannot say whether this additional slippage was caused by a progressive collapse, or if the slippage was present during his first inspection. Brinjikji was also able to inspect the north side of the roof, and saw slipped diagonals. He cannot say when this slippage occurred. After this second inspection Brinjikji still opined that the collapse was caused by a snow load. [Freeway Drive Motion, Ex. 4, Pg. 40-41, 43-45].

Brinjikji visited the site a third time on February 12, 2016. He confirmed that the majority of the roofing repairs had been completed.

C.  Claim Submission

Freund testified at deposition that he was in Florida when the roof collapsed. He learned about the incident when he received a phone call from his office. He was told that snow fall caused the collapse, and advised his office to call the insurance agent. In a letter to Freeway Drive dated March 4, 2015, EMCC's adjustor, Lisa Singer, acknowledged that EMCC had been notified of the loss at the building. Singer advised that Freeway Drive had 60 days to submit proof of loss. [Freeway Drive Motion, Pg. 8].

Freund was also told that a representative from EMCC would look at the building, and that a representative from Freeway Drive should be there to let that person in the building. On March 6, 2015, Mark Lusky, Freeway Drive's property manager, went to the building to meet a man who identified himself as an engineer. [Freeway Drive Motion, Pg. 8-9]. Lusky testified at deposition that the engineer was in the attic for less than five minutes. [Freeway Drive Motion, Ex. 8, Pg. 34]. In a letter to Freeway Drive also dated March 6, 2015, Singer stated that EMCC was investigating the claim and that it lacked sufficient information to make a decision at that time. The next day, Singer sent Lusky a voice mail saying that the building was "not structurally safe" and that "nobody should be in the building." [Freeway Drive Motion, Pg. 9].

D.  Claim Denial

In a letter to Freeway Drive dated March 7, 2015, Singer stated that EMCC had completed its investigation, and that it denied Freeway Drive's claim. Singer indicated that EMCC's investigation revealed that the damage to the roof trusses was a result of fire retardant applied to the roofing structure when it was built. The letter also stated that

over time, the fire retardant, along with moisture in the attic, resulted in structural failure of the trusses. Singer said that the loss did not fall within the Policy's collapse coverage, that the damage was not caused by a "specified cause of loss" as defined by the Policy, and that the loss was subject to the Policy's collapse exclusion. [Freeway Drive Motion, Pg. 9-10].

Freeway Drive asked EMCC to provide reports, testing, and other information to support its denial. In response, Singer stated that the engineering report was privileged work product that would not be released to Freeway Drive. The parties exchanged additional correspondence, and on June 15, 2015, Singer sent a letter to Freeway Drive's attorney with the conclusion of its engineering report prepared by Richard A. Hamann. Hamann stated than in his professional opinion, the damage to the roof was not due to excessive load, but to long term degradation of the truss lumber due to chemical treatments prior to fabrication caused by exposure to excessive moisture. [Freeway Drive Motion, Pg. 10].

E.  Hamann's Report

Hamann's report was prepared based on his observations from his March 6, 2015 inspection of the building. Hamann noted that the inspection was limited to visual observations, that a thorough inspection of the roof was not completed, and that no tests of building materials were completed in preparation for his report. Hamann also stated that the metal connector plates showed evidence of a minor amount of sporadic white calcification, but there was no evidence of significant calcification or ink stamps on the lumber. Such significant calcification, according to Hamann, would indicate that the truss lumber had been treated with a fire retardant prior to fabrication. Hamann

indicated that the lumber would have to be tested to determine if it was chemically treated. [Freeway Drive Motion, Pg. 11-12]. The report also said that the depth of the snow on the roof was greater in areas where the roof trusses sagged excessively. [Freeway Drive Motion, Ex. 14, Pg. 3].

After receiving EMCC's denial letter, Freeway Drive tested a sample of the truss lumber for the presence of fire retardant. The test, performed by Avomeen Analytical Services of Ann Arbor ("Avomeen"), indicated the presence of small amounts of Boron, which Avomeen said was one of the "three major fire retardant tracer elements." Specifically, Avomeen concluded that the amount of total fire retardant permeated into the wood ranged from 7 – 22 parts per million, or 0.007% - 0.0022% by weight. [Freeway Drive Motion, Pg. 12].

At deposition, Brinjikji testified that Boron did not affect wood like earlier used fire retardants in older buildings did. Brinjikji said that according to some studies, if wood treated with Boron reaches high temperatures, mainly 284 degrees Fahrenheit, the wood weakens. Brinjikji could not say for certain that the temperature in the attic got that high, but said that logically there was no way that it did. Even if temperatures had gotten that high, according to Brinjikji, the structural integrity of the wood would only reduce by 5%. [Freeway Drive Motion, Ex. 4, Pg. 70-72, 75-76].

II.    Legal Standard

    A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for the motion, and must identify particular portions of the record which demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324.

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need consider only the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). "[O]n cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 692 (6th Cir. 2001) (citation and internal quotation marks omitted).

III.    Analysis

EMCC argues that it is entitled to summary judgment because: 1) the loss did not constitute a covered collapse within the terms of the "Additional Coverage – Collapse" Policy provision; 2) there is no coverage under the Policy for a loss resulting from a collapse caused solely by the weight of snow; 3) the Policy's "Wear and Tear" and Deterioration exclusions bar coverage because the collapse was caused by thermal deterioration due to the application of fire retardant; and 4) the damage to the north side of the building is not attributable to a snow overload.

7

Freeway Drive argues that it is entitled to summary judgment because: 1) coverage for its loss is available under the Policy's general coverage language; 2) weight of snow is a covered cause of loss under the Policy; 3) there is no evidence that the loss resulted from wear and tear or deterioration; and 4) at minimum, there is a genuine fact dispute as to the damage to the north side trusses.

Through briefing, the parties provide some clarity to a dispute which arises from an almost incomprehensible insurance policy. EMCC spends considerable time discussing the "Additional Coverage – Collapse" provision, and argues that Freeway Drive is not entitled to coverage under that provision. But that is a non-issue, since Freeway Drive agrees. It concedes that there is no coverage under that provision because first and foremost, there was no "abrupt collapse," or "abrupt falling down or caving in" of its building.

The parties also agree that the Collapse Exclusion provision – which says that EMCC will not pay for loss or damage caused by an abrupt falling down or caving in – operates to bar coverage to Freeway Drive.

Accordingly, the Court will not devote any attention to the "Additional Coverage – Collapse" provision of the Policy.

Freeway Drive does seek coverage under other provisions of the Policy; namely: "Covered Causes of Loss"; "Specified Causes of Loss"; the expanded definition of "collapse" in "Collapse Exclusion"; and, "Collapse Exclusion Exception."  Freeway Drive contends that the Policy is an "all-risk" one because of the general insuring language in the Coverage provision and the Covered Cause of Loss provision.

The Court addresses these arguments below.

A.  The Language Of The "Coverage" And "Covered Causes Of Loss" Provisions Makes This Policy An "All-Risk" One.

Section I.A - Coverage

The Policy states EMCC "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [EMCC Motion, Ex. A, Pg. ID 364].

Section I.A.3 – Covered Causes of Loss

A Covered Cause of Loss is defined as a "direct physical loss unless the loss is excluded or limited under Section I … ." *Id.* at 365.

Freeway Drive claims that the language of the Policy, which defines "Covered Cause of Loss" as "[d]irect physical loss unless the loss is excluded or limited … ," creates "all-risk" coverage. [Policy, Pg. ID 140]. It cites *Universal Image Productions, Inc. v. Chubb Corp* in support of its argument that the Policy contains general insuring language and is an all-risk one, meaning it can recover for damage to its building regardless of the cause, unless that particular damage is specifically excluded. *Universal Image Prods. v. Chubb Corp.*, 703 F. Supp. 2d 705, 709, (E.D. Mich. 2010). In *Universal Image*, the policy insured against "direct physical loss or damage to building or personal property caused by or resulting from a peril not otherwise excluded." *Id.* The court characterized this as an "'all-risk' style of insurance coverage. *Id.*

EMCC's argument that this is not an all-risk policy is based on a provision of the Policy which the Court believes is not at issue, the "Additional Coverage – Collapse" provision, because Freeway Drive does not claim coverage under it. EMCC is fixated on the "Additional Coverage – Collapse" provision as the only provision under which Freeway Drive could claim coverage for collapse. EMCC is wrong. The plain meaning of the Policy does not indicate that the "Additional Coverage – Collapse" provision is the only grant of coverage for collapse.

The Policy language is very similar to the language construed in *Universal Image Productions* to provide all-risk coverage. Thus, the Court finds the Policy to be an all-risk policy, as similar policies have been construed by other federal courts in Michigan. *See Tower Auto., Inc. v. Am. Prot. Ins. Co.*, 266 F. Supp. 2d 664, 667 (W.D. Mich. 2003) (concluding that a policy that insured against "all risks of direct physical loss or damage to covered property described herein, except as hereafter excluded" was an all-risk policy); *Iroquois on the Beach, Inc. v. General Star Indem. Co.*, 2007 U.S. Dist. LEXIS 76290, *13, (W.D. Mich., Oct. 12, 2007) (concluding that a policy that provided coverage for "Risks of Direct Physical Loss, unless the loss is excluded or limited under the [policy]" was an all-risk policy (internal quotations omitted)).

Because the Policy is an "all-risk" policy, Freeway Drive can claim coverage under the general insuring language in combination with the "Covered Causes of Loss" provision, the broader definition of "collapse" set forth in the "Collapse Exclusion" provision, and the restoration of coverage provision via the exception to the exclusion. These provisions are discussed below.

However, "[e]ven with an all risk policy, the burden is on [Freeway Drive] to demonstrate that the loss falls within the terms of the [P]olicy." *Tower Auto*, 266 F. Supp. 2d at 668. For Freeway Drive to win on summary judgment, it must demonstrate that there is no genuine dispute of fact that the loss is covered under the exception to the collapse exclusion.

B.  The "Specified Causes of Loss" Provision Makes Clear That Damage From The Weight Of Snow Is A Covered Loss.

<u>Section I.H.12 – Specified Causes of Loss</u>

The Policy notes that "specified causes of loss" means the following: "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot of civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; *weight of snow*, ice, or sleet; water damage." [EMCC Motion, Ex. A, Pg. ID 397] (emphasis added).

EMCC does not disagree that damage caused by the weight of snow is covered under the Policy. [EMCC Motion, Pg. 13]. But, EMCC contends that the plain language of the "Collapse Exclusion" provision bars coverage for collapse due only to the weight of snow, because of language in the "Additional Coverage – Collapse" provision. EMCC says that coverage can only be extended if a snow-load collapse occurs after construction, remodeling, or renovation is complete, and because of the use of defective materials or methods.

Again, EMCC's argument is entrenched in the "Additional Coverage – Collapse" provision, and the Court disagrees with EMCC's interpretation of the Policy, for the reasons discussed in the analysis of the "Collapse Exclusion" provision.

C.  The "Collapse Exclusion" Provision Broadens The Definition of Collapse Beyond Certain Abrupt Collapses That Are Not Covered, But Also States That Coverage Will Be Provided for Some of Those Other Collapses, Depending On The Cause.

Section I.B.2.i(1) – Collapse Exclusion

The Policy says that EMCC will not pay for loss or damage caused by several occurrences, including collapse. Under this section a collapse is defined as:

"(a) An abrupt falling down or caving in;

(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion … ."

[EMCC Motion, Ex. A, Pg. ID 384].

Despite this exclusion language, this Policy section also states that there can be exceptions to the exclusions (i.e., coverage will be available): "if a collapse results in a Covered Cause of Loss at the described premises, [EMCC] will pay for the loss or damage caused by that Covered Cause of Loss". *Id.*

Freeway Drive argues that because this is a general, "all-risk" policy, coverage is provided, subject to the collapse exclusion. It argues that although it may have a collapse as described, this exclusion does not negate coverage if Freeway Drive can demonstrate that an exception to the collapse exclusion restores coverage. This argument triggers the need to analyze the Collapse Exclusion Exception.

D.  The "Collapse Exclusion Exception" Provision Restores Coverage To Freeway Drive, Despite The "Collapse Exclusion" Provision.

Section I.B.2.i(2) – Collapse Exclusion Exception

The Policy provides that the collapse exclusion does not apply:

"(a) To the extent that coverage is provided under the Additional Coverage – Collapse;

*or*

(b) To collapse caused by one or more of the following:

(i) The "specified causes of loss";

(ii) Breakage of building glass;

(iii) Weight of rain that collects on a roof; or

(iv) Weight of people or personal property." [EMCC Motion, Ex. A, Pg. ID 384] (emphasis added).

EMCC argues that under the plain, unambiguous language of the collapse exclusion exception, a specified cause of loss, such as the weight of snow, standing

alone is insufficient to trigger collapse coverage. It admits that the collapse exclusion does not apply if coverage is afforded under the "Additional Coverage – Collapse" provision, or if the collapse is caused by a specified cause of loss. However, according to EMCC, the collapse exclusion exception must be read in harmony with the "Additional Coverage – Collapse" provision. EMCC argues that interpreting the Policy to provide collapse coverage for collapse solely due to a specified cause of loss renders surplusage the unambiguous language of the "Additional Coverage – Collapse" provision. According to EMCC, insurance policies should be construed so that every clause is given meaning, and in a way that avoids surplusage.

Freeway Drive disagrees. It says the plain language of the Policy provides that collapse coverage is restored under this exception, when the collapse is due to the weight of snow. Freeway Drive argues that the "Additional Coverage – Collapse" provision and the "specified causes of loss" provision are distinct exceptions to the collapse exclusion that must be applied separately. This, according to Freeway Drive, is evident in the Policy's use of the word "or" between the two exceptions. Freeway Drive contends that the Policy must be given its plain and ordinary meaning, even if it would render a provision surplusage. It also argues that if the Court finds this portion of the Policy ambiguous, the ambiguity must be resolved in its favor.

Michigan law governs this dispute "because the Court's jurisdiction is premised upon diversity of citizenship." *Vitamin Health, Inc. v. Hartford Cas. Ins. Co.*, 186 F. Supp. 3d 712, 717 (E.D. Mich. 2016). An insurance policy is considered a contract, under Michigan law. *Id.* A trial "court must look at the contract as a whole and give meaning to all terms." *Auto-Owners Ins. Co v Churchman*, 440 Mich. 560, 566 (1992).

Further, a "trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided." *Radenbaugh v. Farm Bureau Gen. Ins. Co.*, 240 Mich. App. 134, 138 (2000).

"A two-step analysis is used when interpreting an insurance policy: first, does the general insurance policy provide coverage for the occurrence, and second, if coverage exists, does an exclusion negate the coverage?" *Auto Owners Ins. Co. v. Olympia Entm't, Inc.*, 310 Mich. App. 132, 146 (2015). The insured bears the burden to establish that its claim falls within the terms of the policy, while the insurer has the burden to prove that a policy exception applies. *Id.* Exclusionary clauses are construed strictly in favor of the insured, but clear and specific exclusions will be given their effect. *Churchman*, 440 Mich. at 567. However, "[a]n exception to an exclusion operates to preserve coverage despite the exclusionary clause." *Kacho v. KSK Hosp. Grp., Inc.*, No. 289012, 2010 WL 715839, at *4 (Mich. Ct. App. Mar. 2, 2010). An exception to an exclusion does not grant coverage, but only operates to preserve coverage despite the exclusion. *Id.* at *11.

If, after considering the entire contract, its words may reasonably be understood in different ways, the contract is ambiguous. *Olympia*, 310 Mich. App. at 146. When a fair reading of the contract leads to an understanding that there is coverage under particular circumstances, and another reading leads to an understand that there is no coverage under the same circumstances, the contract is ambiguous. *Id.* "An ambiguous provision in an insurance contract is construed against the insurer and in favor of coverage." *Id.* The meaning of an ambiguous contract is a question of fact to be decided by a jury. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 469 (2003).

In contrast, a contract which has just one interpretation is unambiguous. *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 440, 444 (E.D. Mich. 1998). "If a contract is clear and unambiguous, the court must enforce the contract as written, according to its plain meaning." *Id.* It is improper for a court to ignore the policy language's plain meaning in favor of a technical or strained construction. *Id.*

Contracts should be construed as a whole, giving meaning to all its provisions. *Royal Prop. Group, LLC v. Prime Ins. Syndicate, Inc.*, 267 Mich. App. 708, 715 (2005). Construction that would render any part of the contract surplusage should be avoided. *Id.* However, a "trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided." *Radenbaugh v. Farm Bureau Gen. Ins. Co.*, 240 Mich. App. 134, 138 (2000). Further, even if an unconstrained reading of a policy renders a portion of it meaningless, it does not mean that the policy is ambiguous. *Michigan Twp. Participating Plan v. Pavolich*, 232 Mich. App. 378, 384 (1998). "[A] finding of surplusage does not equate to a finding of ambiguity." *Id.* at 389.

Both parties argue there is no ambiguity in the Policy.

The Policy states that the collapse exclusion does not apply "[t]o the extent that coverage is provided under the Additional Coverage – Collapse; *or* to collapse caused by … the 'specified causes of loss' … ." [EMCC Motion, Ex. A, Pg. ID 364] (emphasis added). To reach EMCC's interpretation of the collapse exclusion provision, the Court would have to read it in a technical and strained manner. In giving the provision its ordinary and plain meaning, it is clear that the word "or" is an operative term. As Freeway Drive argues, "[T]he word 'or' generally refers to a choice or alternative

between two or more things." *Ottawa County v. Police Officers Ass'n*, 281 Mich. App. 668, 673 (2008).

The "Additional Coverage – Collapse" exception and the "specified causes of loss" exception are distinct ways in which the collapse exclusion does not apply. "[I]t is the insurer's responsibility to clearly express limits on coverage." *Aetna*, 28 F. Supp. 2d at 445. Thus, if EMCC wanted to limit the exclusion exception to only restore coverage for collapse due to "specified causes of loss" that occurred after construction, as provided by the "Additional Coverage – Collapse" provision, it was its duty to do so.

Even if, as EMCC argues, Freeway Drive's interpretation of the exception to the collapse exclusion creates surplusage, it does not render the Policy ambiguous. *Pavolich* 232 Mich. App. at 389. "An exclusionary clause need not be the most clear and specific possible; it need only be unambiguous and *sufficiently* clear and specific." *Ann Arbor Pub. Schs v. Diamond State Ins. Co.*, 236 Fed. Appx. 163, 167 (6th Cir. 2007). Because the word "or" "fairly admits of but one interpretation" of the exception to the collapse exclusion provision, it is not ambiguous and will be given its plain meaning. *Pavolich* 232 Mich. App. at 382. The Court will not ignore the Policy's plain meaning in favor of the technical and strained construction advocated by EMCC. *Aetna*, 28 F. Supp. 2d at 444.

As a matter of law, the Policy unambiguously provides that the collapse exclusion does not apply if coverage is provided under the "Additional Coverage – Collapse" provision, *or* if the collapse is caused by a "specified cause of loss." Thus, the Policy provides coverage for collapse due only to a "specified cause of loss," most pertinent, the weight of snow.

Even if weight of snow is a covered loss, the parties still must demonstrate that there is no genuine dispute of fact as to what caused the loss. As explained below, there is a factual dispute as to whether the weight of snow, or deterioration due to fire retardant, caused the collapse.

E.  There Is A Genuine Dispute Of Fact Concerning The Cause Of The Loss.

Section I.B.2.I – "Wear and Tear" and "Deterioration" Exclusion

The Policy states that it does not provide coverage for loss due to "wear and tear," or "[r]ust, or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." [EMCC Motion, Ex. A, Pg. ID 385].

EMCC argues that Brinjikji, Freeway Drive's engineering expert, is unable to say definitively whether or not the truss damage was due to thermal degradation resulting from the presence of fire retardant. Thus, EMCC says Freeway Drive's expert is unable to refute Hamann's, its expert's, opinion. EMCC also says that Brinjikji cannot say whether or not wear and tear of the over thirty-year-old wood used to construct the trusses is what caused them to slip from their connectors. According to EMCC, Brinjikji's opinion that the weight of snow may have also been a cause of the loss is insufficient to create an issue of material fact as to the applicability of the "wear and tear" and "deterioration" exclusions of the Policy.

EMCC also argues that even if the loss was due to both snow overload and wear and tear or degradation of the trusses, there is no coverage. It claims that Michigan state courts reject the theory that allows for the convergence of two or more causes,

when one cause falls within insurance coverage, and one falls within an exclusion from coverage. Assuming EMCC's argument is correct, the Court would only need to concern itself with it if the parties demonstrate that there is no issue of material fact as to what caused the collapse.

Freeway Drive argues that the evidence conclusively establishes that the loss was due to excessive snow weight. Pietila, who was inside the building when the loss occurred, went outside and noticed an estimated four feet of snow on the roof, which he believes caused the loss. Brinjikji, who Freeway Drive calls an experienced engineer, inspected the building twice, both times determining that the loss was the result of snow overload. Freeway Drive says that Hamann's report is mere speculation, and EMCC cannot withstand a motion for summary judgment by relying on speculation. It argues that at minimum, there is a dispute of material fact that precludes granting summary judgment to EMCC based on the "wear and tear" and "deterioration" exclusions.

Freeway Drive also argues that Hamann's opinion should be excluded because it does not meet the admissibility requirements of Fed. R. Civ. P. 702. With this exclusion, Freeway Drive argues EMCC has no support for its contention that the application of fire retardant caused the loss. Freeway Drives cites *Pluck v. BP Oil Pipeline Co.* for the proposition that the district court is the gatekeeper to ensure that all scientific evidence is relevant and reliable. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011).

While this is an accurate rule of law, the district court in *Pluck* ruled on the admissibility of expert opinion testimony after motions *in limine* were filed seeking the exclusion of such testimony. *Id.* at 675-76. No *in limine* motions have been filed, and the

Court has not held a *Daubert* hearing. Thus, the Court has not been called upon to rule on the admissibility of Hamann's report. Freeway Drive's argument fails.

Because both EMCC and Freeway Drive filed motions for summary judgment, they each must point to parts of the record which demonstrate the absence of any genuine dispute of material fact concerning the cause of collapse. *Celotex* 477 U.S. at 323. Considering the cited materials, and the record as a whole, it is clear that neither party meets its burden.

The parties' experts renders conflicting opinions on the cause of the loss. Hamann said in his report that further testing needed to be done on roof trusses. Freeway Drive arranged for testing, and traces of fire retardant were found. Brinjikji could not say for certain that the conditions in which the retardant could have affected the trusses did not occur. Neither party demonstrates the absence of dispute of material fact that either the weight of snow, degradation, or both, caused the loss. Summary judgment is not warranted for either party.

> F.  There Exist A Genuine Dispute Of Fact As To The Cause Of The Damage To The North Side Trusses.

Section I.E.3.a(4) – Duties in the Event of Loss or Damage

In the event of loss or damage to Covered Property, the Policy states that Freeway Drives must "[t]ake all reasonable steps to protect the Covered Property from further damage." *Id.* at 388.

EMCC argues that it is entitled to partial summary judgment as to any claimed loss concerning trusses on the north side of the building. It says that Brinjikji cannot tell

when the slippage of these trusses occurred and is unable to attribute this damage to a snow overload on the day of the loss. Further, according to EMCC, the trusses on the north side were never shored up after the loss. EMCC notes that Brinjikji testified that if damaged trusses are not shored up in a timely fashion, progressive truss failure may occur. The Policy establishes that in the event of a loss, Freeway Drive must take reasonable steps to protect from further damage. EMCC argues that because Freeway Drive failed to shore up the north side trusses, which resulted in additional damage, coverage under the Policy was never triggered.

Freeway Drive contends that Brinjikji consistently opined that the damage to the trusses on both the north and south sides was due to snow overload. Further, Freeway Drive argues, the only evidence of any event in which the roof was damaged was the initial date of loss, which Pietila believes was caused by the weight of snow. It claims that all of the evidence points to snow overload as the cause of loss on both the north and south sides of the building, and there is at least a genuine dispute as to how and when the damage to the north side trusses occurred. Further, Freeway Drive claims there is no evidence that the damage to the north side trusses was due to progressive collapse because of a lack of timely shoring.

Whether Freeway Drive took reasonable steps to protect from further damage, it argues, is a fact-based inquiry for the jury, which could easily conclude based on the record that Freeway Drive did act reasonably.

Brinjikji inspected the north side of the building on his second visit, when he saw slipped diagonals in the roofing structure. He is unable to tie the damage to any particular snow storm. [Freeway Drive Motion, Ex. 4, Pg. 45]. On his third visit, Brinjikji

noticed for the first time additional slippage on the north side of the roofing structure, but also could not say when the slippage occurred. [Freeway Drive Motion, Ex. 4, Pg. 55]. Although Brinjikji believes that the slippage was caused by overload, because he cannot tell when the slippage occurred, it cannot be traced back to the March 3, 2015 date of loss. However, as Freeway Drive indicates, Pietila, who was present when the loss occurred, ran outside and saw snow on the roof. Pietila also testified at deposition that there were two drifts in the roof, one on the north side and one on the south side. [Freeway Drive Motion, Ex. 3, Pg. 26]. Pietila does admit that the drift on the north side was "nothing like the one on the south side." *Id.* By pointing to Pietila's testimony, Freeway Drive sets forth facts that show a genuine issue for trial. *Celotex* 477 U.S. at 323. Summary judgment for EMCC as to the north side of the building is not warranted.

Freeway Drive claims that it initially focused its repair efforts on the south side of the building because that is where Brinjikji was first able to inspect and where the sagging was observed. Brinjikji also testified that after he saw truss slippage on the north side, he made recommendations for repair. [Freeway Drive Motion, Ex. 4, Pg. 58]. There is an issue of fact as to whether these actions were reasonable, which, as Freeway Drive contends, is a question for the jury. *Altman v. CBOCS, Inc.*, 940 F. Supp. 2d 560, 565-566 (W.D. Ky. 2013).

IV.    Conclusion

The Policy unambiguously provides coverage for collapse caused solely due to the weight of snow. However, genuine issues of material fact exist as to what caused the collapse. Both motions for summary judgment are DENIED.

**IT IS ORDERED**.

          S/ Victoria A. Roberts        
          Victoria A. Roberts
          United States District Judge

Dated:  December 18, 2017